FOURTH DIVISION

March 26, 1998 

No. 1-95-3551

CITICORP SAVINGS OF ILLINOIS, )                                           )                       Plaintiff and ) Appeal from the

Counterdefendant-Appellee,    ) Circuit Court                         ) of Cook County. 

     v.                         ) 

                                ) 

FRED RUCKER, AMERICAN NATIONAL BANK   )   

AND TRUST COMPANY OF CHICAGO, as      ) 

Trustee, HARRY "BUS" YOURELL, CHICAGO )

TITLE AND TRUST COMPANY, as Trustee,    )

LAVERGNE JONES, UNKNOWN OWNERS and    ) Honorable

NONRECORD CLAIMANTS,                 ) JOHN K. MADDEN,

                                      ) Judge Presiding.

Defendants and ) 

          Counterplaintiffs-Appellants. )                  

JUSTICE SOUTH delivered the opinion of the court:

On January 30, 1978, American National Bank and Trust Company of Chicago, as trustee, executed a promissory note in favor of Citicorp Savings of Illinois, n/k/a Citibank, F.S.B., in the original principal amount of $25,000.
  The note was secured by a mortgage on a six-unit apartment building located at 1456-1458 East 71st Place in Chicago, Illinois.  At all relevant times, title to the property was held by the trustee. 

On May 1, 1987, counterplaintiff Fred Rucker allowed the insurance on the property to expire.  In accordance with paragraph B(1) of the mortgage, Citicorp advised Rucker that it would obtain insurance coverage on the property and add the premium cost to the indebtedness due on the note if Rucker failed to reinstate or replace his cancelled insurance policy.  The mortgage documents provided that in the event of Rucker's failure to obtain or maintain the required property insurance, Citicorp could obtain the insurance on Rucker's behalf and charge it to Rucker's account. 

Rucker did not reinstate or replace the insurance policy on the property.  On May 21, 1987, Citicorp's subsidiary, Citicorp Savings Insurance Agency, Inc., notified Rucker that the property had been added to a blanket insurance policy for Citicorp Savings

of Illinois, and the "annual premium of $422" was being charged

to Rucker's account.  Notwithstanding Citicorp's notification, without disclosure to Rucker, Citicorp added premiums for the insurance coverage to the indebtedness due under Rucker's note at a rate of $422 monthly, not $422 annually, as previously represented to Rucker.  

Thereafter, Rucker fell behind in his mortgage payments.  When Rucker tendered to Citicorp the total for back payments that had been specified by Citicorp, he was notified for the first time that the premium rate stated to him as an annual rate was instead a monthly rate of premium and that an additional amount of $4,300 was past due.  As a result, Citicorp rejected Rucker's tender of payment, which excluded the monthly insurance premiums of $422, and Rucker remained in default under the mortgage contract.      

On December 2, 1988, Citicorp filed a complaint for foreclosure of mortgage seeking to foreclose the mortgage based upon Rucker's failure to make the monthly payments due and owing under the note.  On September 27, 1990, the circuit court granted Citicorp's motion for summary judgment.  A  judgment of foreclosure and sale was entered on October 10, 1990.  Pursuant to the judgment, the court awarded Citicorp $11,314.70 for its advances for insurance.  

On October 25, 1990, Rucker filed a three-count counterclaim against Citicorp alleging negligence and fraud in the procurement of insurance on the property and excessive premiums charged.

Citicorp filed a motion to strike and dismiss the counterclaim, and the motion was set for hearing on February 20, 1991.  

On January 30, 1991, Rucker filed a chapter 13 bankruptcy petition, and the hearing on Citicorp's motion to strike and dismiss the counterclaim was never held.  On July 15, 1993, the bankruptcy case was dismissed.            

On November 16, 1993, a sheriff's sale was conducted at which Citicorp was the successful bidder for the property.  An order was entered approving the sheriff's report of sale and distribution on December 10, 1993. 

On January 20, 1994, Rucker filed a motion for an order vacating the order approving the sale.  The circuit court denied Rucker's motion on January 31, 1994, and granted Rucker leave to file his amended counterclaim, which  Rucker filed on February 7, 1994.

On February 14, 1994, Rucker filed a notice of appeal of the court's order denying his motion to vacate the order approving sale of the property.  The appeal raised, 
inter
 
alia
, the issue in the amended counterclaim concerning the propriety of the advances for insurance by Citicorp.  On June 15, 1995, the appellate court entered an order dismissing the appeal on the grounds of mootness.  

On May 2, 1994, while the appeal was pending, Citicorp filed a motion to strike and dismiss Rucker's amended counterclaim, which the court granted on September 19, 1994.  Thereafter, Rucker filed his second amended counterclaim.  On December 14, 1994, Citicorp filed a motion to strike and dismiss Rucker's second amended counterclaim, which the court granted on January 13, 1995.  

On March 1, 1995, Rucker filed a three-count third amended counterclaim against Citicorp.  Count I alleges that Citicorp breached the implied duty of good faith and fair dealing in connection with the procurement of insurance on the property.  Count II alleges that Citicorp was negligent in the procurement of insurance on the property.  Count III alleges that Citicorp breached a fiduciary duty owed to Rucker. 

On May 3, 1995, Citicorp filed a motion to strike and dismiss Rucker's third amended counterclaim.  Citicorp argued  that (1) the cause of action was barred by the law of the case doctrine; (2) count II was barred by the 
Moorman
 doctrine (
Moorman Manufacturing Co. v. National Tank Co.
, 91 Ill. 2d 69, 435 N.E.2d 443 (1982)); and (3) counts I, II and III failed to allege facts necessary to support the causes of action alleged.  

On September 8, 1995, the circuit court granted Citicorp's motion to strike and dismiss Rucker's third amended counterclaim with prejudice as being substantially insufficient in law and based upon the law of the case doctrine.  Rucker appeals.  We reverse and remand.

Rucker first argues that the third amended counterclaim should not be barred by the law of the case doctrine.  The law of the case is a rule of practice, based on sound policy that where an issue is once litigated and decided, that should be the end of the matter and the unreserved decision of a question of law or fact made during the course of litigation settles that question for all subsequent stages of the suit.  
Coldwell Banker Havens, Inc. v. Renfro
, 288 Ill. App. 3d 442, 679 N.E.2d 1299 (1997); 
Continental Insurance Co. v. Skidmore, Owings & Merrill
, 271 Ill. App. 3d 692, 648 N.E.2d 959 (1995).  

In this case, although Rucker made the very same arguments regarding excessive overcharges for insurance in both the foreclosure action and the third amended counterclaim, the question of whether Rucker was overcharged for insurance was never decided in the foreclosure action.  This issue was explicitly reserved by the court for determination in a separate and distinct action by way of a counterclaim.  

At the foreclosure proceedings before Judge Sodaro on September 27, 1990, the following colloquy took place:

"THE COURT:  No, its not a counter-claim attacking the foreclosure, its a counter-claim for the  money that you made overcharging them.

MR. RAPPIN [Citicorp's counsel]:  Well, that should be a separate action, judge. 

THE COURT:  I don't see why not." 

Further, on January 30, 1991:

"THE COURT:  [T]here are so many things in default.  That's ... why I decided the only thing you [Rucker] can get is a counterclaim if it's been overinsured wrongfully. 

MR. RAPPIN:  None of those issues are before this court.  They are not, they are not properly pled, they weren't involved in the answer or anything else. ... If they want to bring them up in the counterclaim they can do that, but we can only deal with what's present at the time the pleadings are filed. 

THE COURT:  Go ahead with the counterclaim.  If they overcharged this man for insurance, for insurance that is unreasonable, they are going to end up paying for it, but I am not going to stop the foreclosure."

The record makes clear that the law of the case decided in the foreclosure action was that despite evidence Citicorp may have overcharged Rucker for insurance, Rucker had also defaulted on several other items relating to his mortgage, 
i.e.
, the principle, interest and taxes.  Therefore, the court determined that the foreclosure sale would go forward.  

The court, however, did not make a determination as to whether Rucker was overcharged for insurance.  This question was explicitly reserved by the court for determination by way of a counterclaim and, therefore, remained after the conclusion of the foreclosure proceedings.  

Further, a counterclaim is not a defense on the merits, but is an independent cause of action in favor of the defendant against plaintiff, which seeks affirmative relief.  735 ILCS 5/2-608 (West 1996); 
Dudek, Inc. v. Shred Pax Corp.
, 254 Ill. App. 3d 862, 626 N.E.2d 1204 (1993).  Hence, Rucker's third amended counterclaim, inasmuch as it sets forth allegations addressing the undetermined issue of whether Citicorp overcharged him for insurance, is not barred by the law of the case doctrine.  

Rucker's next argument is that the allegations contained in his third amended counterclaim are sufficient to state a cause of action and, therefore, the circuit court erred in dismissing the counterclaim.  In reviewing Rucker's counterclaim, we accept as true all well-pleaded facts and reasonable inferences therefrom, but we need not accept conclusions or inferences that are not supported by specific factual allegations.  
Nuccio v. Chicago Commodities, Inc.
, 257 Ill. App. 3d 437, 628 N.E.2d 1134 (1993).  Although pleadings should be liberally construed, the complaint must allege facts necessary to state a cause of action.  
Nuccio
, 257 Ill. App. 3d 437, 628 N.E.2d 1134.  In order to state a cause of action, the counterclaim must be both legally and factually sufficient, setting forth a legally recognized claim as its basis for recovery, as well as pleading facts which bring the claim within the legally recognized cause of action alleged.
  
Nuccio
, 257 Ill. App. 3d 437, 628 N.E.2d 1134.

   Count I of Rucker's third amended counterclaim alleges that Citicorp, in exercising its discretion under the mortgage contract to procure insurance on behalf of Rucker and charge it to Rucker's account, breached the implied duty of good faith and fair dealing.  Citicorp responds that the implied duty of good faith and fair dealing does not apply, and even if it does apply, Rucker's allegation that Citicorp breached the duty is misplaced.

The mortgage is merely a contract as between the immediate parties.  
Petkus v. St. Charles Savings & Loan Ass'n
, 182 Ill. App. 3d 327, 538 N.E.2d 766 (1989).  The rules of contract provide that the parties to a contract are presumed to have intended what their language clearly imports so that a court has no discretion to require parties to accept any terms other than those in their contract.  
Bornstein v. First United
, 232 Ill. App. 3d 623, 597 N.E.2d 870 (1992).       

Here, in paragraph A(2) of the mortgage contract, Rucker agreed "[t]o keep the improvements now or hereafter upon said premises insured against damage by fire, windstorm and such other hazards or liability as the mortgagee may require to be insured against."  Paragraph B(1) of the mortgage provides "[t]hat in case of the failure of the [mortgagor] to perform any of the covenants herein, the mortgagee may do on behalf of the [mortgagor] everything so covenanted."

Absent an express disavowal by the parties, every contract carries the duty of good faith and fair dealing, as a matter of law.  
Jespersen v. Minnesota Mining & Manufacturing Co.
, 288 Ill. App. 3d 889, 895 (1997).  Although every contract implies good faith and fair dealing, the duty of good faith and fair dealing is a derivative principle of contract law.  
Resolution Trust Corp. v. Holtzman
, 248 Ill. App. 3d 105, 618 N.E.2d 418 (1993).  It is essentially used as a construction aid in determining the intent of the parties where an instrument is susceptible of two conflicting constructions.  
Anderson v. Burton Associates, Ltd.
, 218 Ill. App. 3d 261, 578 N.E.2d 199 (1991). 

Generally, problems involving the duty of good faith and fair dealing arise where one party to a contract is given broad discretion in performance.  The doctrine of good faith then requires the party vested with contractual discretion to exercise that discretion reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.  
Resolution
, 248 Ill. App. 3d. 105, 618 N.E.2d 418.  Further, the duty of good faith and fair dealing requires the party vested with contractual discretion not to injure other parties to the contract by action or omission and not to act inconsistently with other parties' rights.  
Brzozowski v. Northern Trust Co.
, 248 Ill. App. 3d 95, 618 N.E.2d 405 (1993). 

In the present case, after Rucker failed to reinstate or replace the insurance on the mortgaged property, Citicorp had unbridled discretion in procuring replacement insurance and charging it to Rucker's account.  The mortgage contract is devoid of any express limitation on Citicorp's exercise in procuring the insurance and charging it to Rucker once the condition precedent— that Rucker failed to maintain fire insurance—is satisfied.   

Moreover, the facts of record indicate that Citicorp, after notifying Rucker that the property had been added to a blanket insurance policy for Citicorp Savings of Illinois and that the annual premium of $422 was being charged to Rucker's account, subsequently, without prior notification to Rucker, charged his account at a rate of $422 monthly.  

The allegations in count I of Rucker's third amended counterclaim, specifically, paragraphs 6 (c), (f), (h) and 7 in regard to Citicorp's failure to timely notify Rucker that the insurance premium had been substantially increased, raise a question of fact not subject to a motion to dismiss as to whether Citicorp breached its implied duty of good faith and fair dealing.  Accordingly, we find that Rucker has stated a cause of action for breach of the implied duty, and the circuit court therefore erred in dismissing count I of Rucker's third amended counterclaim.

Count II of Rucker's third amended counterclaim alleges a cause of action based upon negligence.  Citicorp argues that count II is barred by the 
Moorman
 doctrine.  Pursuant to the 
Moorman
 doctrine, Illinois law prohibits the recovery of economic loss under a tort theory.  
Moorman Manufacturing Co. v. National Tank Co.
, 91 Ill. 2d 69, 435 N.E.2d 443 (1982).  On appeal, Rucker has elected not to argue against 
Moorman
 and its application to count II and is voluntarily waiving the negligence and 
Moorman
 issues
.  

Count III of Rucker's third amended counterclaim alleges that Citicorp breached its fiduciary duty to obtain replacement insurance on Rucker's behalf by charging excessive insurance premiums to Rucker's account, failing to notify Rucker, and then preventing Rucker from curing a default exclusive of those excessive charges which resulted in Citicorp profiting from the acquisition of the foreclosed property.  Rucker argues that count III adequately pleads Citicorp assumed a fiduciary relationship by becoming Rucker's agent, under the authority provided to and exercised by it by reason of the language of the mortgage contract Citicorp created.    

Initially we note that, the question of agency is not a question of law to be decided from the pleadings.  
Stefan v. State Farm Mutual Automobile Insurance Co.
, 284 Ill. App. 3d 727, 672 N.E.2d 1329 (1996).  Ordinarily, unless there is no dispute regarding the parties' relationship, the existence and scope of an agency relationship are factual questions under Illinois law and are to be determined by the trier of fact.  
In re Telesphere Communications, Inc.
, 205 B.R. 535 (N.D. Ill. 1997).  Once an agency relationship is found, a fiduciary relationship arises as a matter of law.  
Letsos v. Century 21-New West Realty
, 285 Ill. App. 3d 1056, 675 N.E.2d 217 (1996).  

A fiduciary relationship giving rise to a duty of loyalty owed to the person for whom the fiduciary is acting exists when one person places trust and confidence in another who, as a result, gains influence and superiority over the other.  
People v. Layne
, 286 Ill. App. 3d 981, 677 N.E.2d 469 (1997).  The relationship may arise as a matter of law, such as between agent and principal, or it may be moral, social, domestic, or personal based upon the particular facts.  
Layne
, 286 Ill. App. 3d 981, 677 N.E.2d 469.  

The burden of pleading and proving the existence of a fiduciary relationship lies with the party seeking to establish it.  
In re Telesphere Communications, Inc.
, 205 B.R. 535.  "Factors to be considered in determining whether a fiduciary relationship exists include the degree of kinship, disparity of age, health, mental condition, education and business experience between the parties, and the extent to which the allegedly servient party entrusted the handling of his business and financial affairs to the other and reposed faith and confidence in him."  
Farmer City State Bank
 v. Guingrich
, 139 Ill. App. 3d 416, 424, 487 N.E.2d 758 (1985). 

Although there is nothing inherent in business dealings between a lender and a borrower from which springs a cognizable fiduciary relationship 
(
McErlean v. Union National Bank
, 90 Ill. App. 3d 1141, 414 N.E.2d 128 (1980)), as noted above, a fiduciary relationship may be found to exist by reason of the facts surrounding a particular transaction.  
Layne
, 286 Ill. App. 3d 981, 677 N.E.2d 469.  

Particular words and phrases in a contract derive their meaning from the context in which they are used.  Thus, contracts must be viewed as a whole.  
Board of Trade v. Dow Jones & Co.
, 98 Ill. 2d 109, 122, 456 N.E.2d 84 (1983).  Considering the mortgage agreement in its entirety, there is nothing that suggests that the relationship between Rucker and Citicorp was intended to be anything other than mortgagor and mortgagee.  Although Rucker agreed that Citicorp may perform certain acts "on behalf of" Rucker, where Rucker himself fails to perform, we do not believe this provision evinces an intent by Citicorp to assume the fiduciary duties of an agent and act primarily for the benefit of Rucker.

This interpretation is consistent with the generally held view that a mortgagee is not the agent of the mortgagor, notwithstanding the mortgagee's ability to affect the legal relations of the mortgagor.  Restatement (Second) of Agency §13 (1957).  As more fully set forth in the Restatement:

"[T]he understanding that one is to act primarily for the benefit of another is often the determinative feature in distinguishing the agency relation from other relations.  Thus, mortgagees, pledgees, and other similar power holders, although having power to sell the property involved under certain conditions or to subject another to contractual liability, are not agents of the power giver; they have not undertaken to exercise such power primarily for the benefit of the person in whose name they formally act, and they are entitled to prefer their own interests in dealing with the subject matter."  Restatement (Second) of Agency §13 (1957).

Thus, although the mortgage authorized Citicorp to act "on behalf of" Rucker, this did not change the basic nature of the relationship between the parties and Citicorp was acting primarily for its own benefit and interests.

Finally, Rucker contends that the third amended counterclaim  alleges the basis for the imposition of punitive damages. Citicorp argues in response that Rucker's allegations do not rise to the level of malice or wanton and wilful conduct necessary to support the imposition of punitive damages.  

The Illinois Supreme Court has stated that "[w]hile deceit alone cannot support a punitive damage award, such damages may be allowed 'where the wrong involves some violation of duty springing from a relation of trust or confidence.'"  
Home Savings & Loan Ass'n v. Schneider
, 108 Ill. 2d 277, 284, 483 N.E.2d 1225 (1985), quoting 
Laughlin v. Hopkinson
, 292 Ill. 80, 89 (1920).  Similarly, punitive damages are appropriate to punish and deter conduct where the defendant is guilty of an intentional breach of fiduciary duty.  
Levy v. Markal Sales Corp.
, 268 Ill. App. 3d 355, 378, 643 N.E.2d 1206 (1994), citing 
Obermaier
 v. Obermaier
, 128 Ill. App. 3d 602, 470 N.E.2d 1047 (1984).

   In this case, Rucker has not pled facts necessary to support the imposition of punitive damages.  

For the foregoing reasons, the order of the circuit court is reversed and we remand the matter for answer to count I of the third amended counterclaim and further proceedings not inconsistent with this opinion.  The circuit court's findings as to counts II and III are affirmed.

Affirmed in part and reversed in part; cause remanded.

HARTMAN, P.J., and HOURIHANE, J., concur.