**In re OLDE PRAIRIE BLOCK OWNER, LLC, Debtor.**

**No. 10 B 22668.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Nov. 24, 2010.

John Ruskusky, George R. Mesires, Niles N. Park, Patrick F. Ross, Ungaretti & Harris LLP, Chicago, IL, for Debtor.

Shima S. Roy, Ethan Ostrow, Lawrence P. Vonckx, Baker & McKenzie LLP (Chicago), Chicago, IL, for CenterPoint Properties Trust.

## OPINION ON CENTERPOINT'S MOTION TO DISMISS

JACK B. SCHMETTERER,
Bankruptcy Judge.

This bankruptcy case involves a dispute between Olde Prairie Block Owner, LLC, (the "Debtor") and CenterPoint Properties Trust ("CenterPoint"), CenterPoint, Debtor's principal secured lender, filed a proof of claim to which Debtor objected. As ordered, the objections were repleaded according to requirements for Adversary Proceedings. Debtor thereby asserted several counterclaim Counts relating to CenterPoint's actions in negotiating a loan and asserting its contractual right to control a condemnation proceeding involving a parcel of land owned by Debtor. Count I seeks to rescind the mortgage and note; Count II sought damages for tortious interference, but has been stricken for reasons stated with leave to file an amended Count; Count III asserts a breach of duty of good faith and fair dealing; Count IV asserts a breach of fiduciary duty; and Count V alleges negligence in tort. CenterPoint moved to dismiss Debtor's counterclaims.

### LEGAL STANDARDS

"A pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8 (made

applicable here by Fed. R. Bankr.P. 7008 and by the Final Pretrial Order dated Oct. 4, 2010 [Docket. No. 258] ). To survive a motion to dismiss made under Rule 12(b)(6) Fed.R.Civ.P. (made applicable here by Fed. R. Bankr.P. 7012(b)), a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A claim is plausible when the claimant "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl.,* 550 U.S. at 556, 127 S.Ct. 1955).

Plausibility does not require probability, but does require something "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Bell Atl.,* 550 U.S. at 556, 127 S.Ct. 1955).

> "Plausibility" in this context does not imply that the district court should decide whose version to believe, or which version is more likely than not. ... [T]he plaintiff must give enough details about the subject-matter of the case to present a story that holds together. In other words, the court will ask itself *could* these things have happened, not *did* they happen. For cases governed only by Rule 8, it is not necessary to stack up inferences side by side and allow the case to go forward only if the plaintiff's inferences seem more compelling than the opposing inferences.

*Swanson v. Citibank, N.A.,* 614 F.3d 400, 404 (7th Cir.2010) (emphasis in original).

In deciding a motion to dismiss, the factual, nonconclusory allegations of the pleading are accepted as true. *Iqbal,* 129 S.Ct. at 1949–50. Certain documents may also be considered. "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed.R.Civ.P. 10(c) (made applicable by Fed. R. Bankr.P. 7010). In addition, "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." *McCready v. eBay, Inc.,* 453 F.3d 882, 891 (7th Cir.2006) (quotation marks and citations omitted).

All counterclaims pleaded by Debtor to the claim of CenterPoint appear to be asserted under Illinois law and precedent. The parties have separately agreed as to all Counts that a bankruptcy judge may finally adjudge each Count even if jurisdiction is related rather than core.

## DISCUSSION

### COUNT I: RESCISSION FOR ASSERTED DURESS

In Illinois, economic duress is ground for contract rescission where a party was (1) induced to enter the contract by a wrongful act or threat (2) under circumstances that deprived the party of free will. *Kaplan v. Kaplan,* 25 Ill.2d 181, 182 N.E.2d 706, 709 (1962). An act need not be legally actionable, but includes acts that "are wrongful in a moral sense." *Id.;* accord *Gerber v. First Nat'l Bank,* 30 Ill. App.3d 776, 332 N.E.2d 615, 618 (1975). To establish duress, a party must establish that the other party's wrongful act left it "bereft of the quality of mind essential to the making of a contract." *Alexander v. Standard Oil Co.,* 97 Ill.App.3d 809, 53 Ill.Dec. 194, 423 N.E.2d 578, 582 (1981). However, economic duress is not established when "consent to an agreement is secured because of hard bargaining positions or the pressure of financial circumstances." *Id.*

Debtor's Count I is a claim for rescission of the mortgage and note in the

amount of the CenterPoint loan to Debtor of $37,127,667.03. It asserts that Debtor entered into the loan agreement under duress. Specifically, Debtor alleges that CenterPoint wrongfully pressured Debtor to accept onerous terms when it entered into the mortgage and note, depriving Debtor of free choice by requiring those terms late in negotiations when Debtor had no other financing options. Center-Point's alleged duress consisted of Center-Point's taking advantage of its tactics, in light of Debtor's immediate need at the time for a new loan, to impose onerous terms that Debtor had no choice but to accept. (*See* Supplemental Am. Objection [Docket No. 312] ¶¶ 120–42.)

Debtor owned parcels of property that were earlier financed with a loan from MMA Realty Capital. (*Id.* ¶ 27.) That loan ("MMA Loan") came due on February 28, 2008. Under terms of that loan, if Debtor was unable to repay it on time, its property was subject to an expedited extra-judicial seizure. (*Id.* ¶¶ 28–30.) In late 2007, Debtor entered into negotiations for refinancing the debt with CenterPoint and also with another financial services company; CenterPoint was aware that Debtor's MMA loan was soon coming due. (*Id.* ¶¶ 38–41.) Towards the end of January of 2008, CenterPoint and Debtor signed a non-binding term sheet. Center-Point represented therein that it would seek internal approval of those terms within fourteen days. (*Id.* ¶¶ 53, 56.) One further term contained therein provided that Debtor break off negotiations with the other potential lender. (*Id.* ¶ 52.) Pursuant to that term sheet, and in expectation of reaching a satisfactory deal with CenterPoint, Debtor did break off negotiations with the other potential lender. (*Id.* ¶ 56.) Terms of the term sheet were repeated by the parties in later documents, but none of those were final binding contracts between the parties. (*Id.* ¶¶ 63–69.)

Contrary to Debtor's expectations, CenterPoint delayed offering final terms until days before the MMA's loan matured. It then offered Debtor terms that differed from those in the initial term sheet. The new terms gave CenterPoint the right to control any condemnation action, slightly increased the interest rate, and decreased the amount of loan. (*Id.* ¶¶ 74–77.) Debtor, faced with imminent default on the MMA loan and consequent immediate loss of its property under terms of that loan, accepted those new terms now asserted to be "onerous." (*Id.* ¶ 79.)

The issues presented are whether the alleged actions by CenterPoint were wrongful and, if so, whether those acts left Debtor "bereft of the quality of mind essential to the making of a contract." *Standard Oil Co.,* 53 Ill.Dec. 194, 423 N.E.2d at 583. It must be concluded that the foregoing pleaded facts do not show plausibly that CenterPoint's actions deprived Debtor of its free will, and therefore Debtor's first Count will be dismissed.

Debtor was a business concern that owned a multi-million dollar property with a multi-million dollar loan financing it. It can and should be held to the financing decision it made, including acquiescing to the non-binding term sheet and request that it cease negotiations with another potential lender. *See Neal v. Lacob,* 31 Ill. App.3d 137, 334 N.E.2d 435, 440 (1975) ("[P]eople should be entitled to contract on their own terms without the indulgence of paternalism by courts in the alleviation of one side or another from the effects of a bad bargain.") Debtor was no more bound to comply with the term sheet than CenterPoint was. If Debtor had continued negotiations with the alternative financing source and CenterPoint had chosen to break off negotiations as a result, Debtor could have continued to pursue other lend-

ing options. More broadly, the crisis situation that Debtor complains of was a result of Debtor's business and negotiation decision to put all of its refinancing eggs into one basket and rely entirely on CenterPoint, CenterPoint's use of that circumstance as leverage did not deprive Debtor of its free will. *See Resolution Trust Corp. v. Ruggiero,* 977 F.2d 309, 314 (7th Cir.1992) ("A borrower cannot charge a lender with economic duress where the pressures on the borrower are the result of his own business decisions and economic conditions.")

Debtor argues that "[t]he choice between entering an unfavorable contract and losing one's Property and business is not a free choice." (Supplemental Am. Objection ¶ 139.) However, Debtor's pleaded facts do not show that it was faced with the decision of an unfavorable contract or losing its property and business, even when presented with onerous terms shortly before the MMA Loan came due. Debtor has not pleaded that it sought forbearance from MMA. It has not pleaded that it came back with a counter-offer to CenterPoint's new and onerous terms. It has not pleaded that the alternative potential lender was approached in the few days remaining before the MMA Loan came due to see if it was still possible to negotiate a loan from it. In other words, Debtor has not pleaded that CenterPoint's actions left it without any meaningful alternatives. Indeed, it has not demonstrated why it could not have obtained some time for alternative financing and delayed action by MMA through filing a bankruptcy case. *See Pierce v. Atchison, Topeka & Santa Fe Ry. Co.,* 65 F.3d 562, 569 (7th Cir.1995) ("[O]ne cannot successfully claim duress as a defense to a contract when he had an alternative to signing the agreement.")

█ Finally, even if Debtor had sufficiently pleaded duress, it would not be entitled to rescission because it has not pleaded an ability to restore CenterPoint to its "pre-contract condition," a prerequisite to receiving the benefit of rescission. *See, e.g., In re Green,* 241 B.R. 187, 199–200 (Bankr.N.D.Ill.1999); *Ill. State Bar Ass'n Mut. Ins. Co. v. Coregis Ins. Co.,* 355 Ill.App.3d 156, 290 Ill.Dec. 394, 821 N.E.2d 706, 713 (2004). The party seeking rescission must show that it is capable of restoring the other party to the status quo. *See, e.g., Horwitz v. Sonnenschein Nath & Rosenthal LLP,* 399 Ill.App.3d 965, 339 Ill. Dec. 459, 926 N.E.2d 934, 943 (2010). However, Debtor has merely pleaded that "the parties can and will be placed in the status quo by payment to CenterPoint by Debtor the sum of $37,127,667.03 (*sic* ) plus appropriate interest ...," without stating where any particular source that sum would come from. (Supplemental Am. Objection ¶ 142.) Debtor concedes that it was unable to repay CenterPoint's loan when it came due in February 2009 and does not state where it would be able to find the funds to pay CenterPoint upon rescission of the note and mortgage. (*Id.* ¶ 117.) Since Debtor pleaded that it did not have the money to pay CenterPoint and did not show any subsequent change in its ability to pay, it has not shown that it is capable of restoring CenterPoint to its pre-contract condition.

Taking Debtor's well-pleaded facts as true, Count I does not show a plausible claim of economic duress upon which rescission can be granted, and it will therefore be dismissed.

## COUNT III: ALLEGED BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

█ Under Illinois law, a duty of good faith and fair dealing is an implied term of every contract. *Martindell v. Lake Shore Nat'l Bank,* 15 Ill.2d 272, 154 N.E.2d 683, 690 (1958). "[T]his obligation requires a

party vested with contractual discretion to exercise it reasonably, and further he may not do so arbitrarily, capriciously, or in a manner inconsistent with reasonable expectations of parties." *Kirkpatrick v. Strosberg*, 385 Ill.App.3d 119, 323 Ill.Dec. 755, 894 N.E.2d 781, 793 (2008).

■ In Count III, Debtor seeks damages for breach of contract. Specifically, Debtor alleges that CenterPoint breached its duty of good faith and fair dealing by failing to exercise responsibly and in good faith its contractual right to control a condemnation action filed against a large portion of Debtor's property. The mortgage between Debtor and CenterPoint provided:

> Notwithstanding anything to the contrary contained herein, Lender shall have the right, at Borrower's sole cost and expense, to exclusive control, prosecution and defense of any condemnation proceedings; provided however, all condemnation (including the conveyance in lieu thereof) compensation, awards, proceeds, damages, claims and payments to which Borrower may become entitled as a result of such condemnation proceedings shall be subject to the reasonable approval of Borrower and Lender.

(Supplemental Am. Objection ex. 3, at 14.) In March 2008, the Metropolitan Pier and Exposition Authority (the "MPEA") offered to purchase one of Debtor's parcels for $17.7 million. (*Id.* ¶ 94.) That offer was not accepted, and the MPEA filed a condemnation proceeding against Debtor to acquire that parcel in June 2008. (*Id.* ¶ 98.) CenterPoint was aware of and appeared in the proceeding, asserting its contractual right to control the response to the proceeding. (*Id.* ¶¶ 96, 99, 101, 103.) However, Debtor alleges that CenterPoint took no steps—such as engaging in settlement discussions, filing a traverse or motion to dismiss, or even making an effort to communicate with the MPEA—in order to

resolve the condemnation action. (*Id.* ¶¶ 96, 103.) Instead, CenterPoint is said to have impeded Debtor's efforts to resolve the condemnation proceeding by threatening to declare a default and accelerate the loan; failing to participate in or assist the settlement discussions that Debtor initiated with the MPEA; and taking action through an MPEA board member named Gates to cause the MPEA to stop the negotiations. (*Id.* ¶¶ 104–114.) The MPEA has since dismissed the condemnation action.

## A. Debtor's Allegations Do Not Defeat its Claim for Breach of Contract

CenterPoint first argues that Debtor's own allegations defeat its claim. Specifically, it contends that Debtor's pleadings imply that the MPEA's March 2008 offer was rejected by Debtor and not by CenterPoint, and therefore there is no action on which Debtor can base its breach of contract claim.

This argument fails for two reasons. First, Debtor made no such allegation. The MPEA's letter was not addressed to CenterPoint (Mot. to Dismiss ex. G), but Debtor did specifically allege that "CenterPoint failed to accept the MPEA settlement offer of $17.7 million for the Olde Prairie Parcel or otherwise seek to advance the settlement discussions." (Supplemental Am. Objection ¶ 97.) Second, even if CenterPoint correctly identified an inference that it was Debtor that rejected the MPEA offer, that would not be enough to dismiss Count III. The story told by Debtor's allegations is that the mortgage vested CenterPoint with the discretion to control any condemnation proceeding; CenterPoint exercised that discretion by asserting its control over the MPEA's proceeding when it was filed; and that CenterPoint acted in bad faith by failing to take any steps to resolve the proceeding

and by actively impeding Debtor's efforts to settle with the MPEA. The identity of the party that rejected the original March 2008 MPEA offer is not critical to the Debtor's Complaint, since that offer occurred before the MPEA even filed the condemnation proceeding.

### B. Debtor's Default Does Not Bar its Breach of Contract Claim

▇▇ CenterPoint next argues that the breach of contract claim must be dismissed because Debtor is in default and therefore cannot allege that it substantially performed on the contract. CenterPoint is wrong on the law. A party suing for breach of contract must show that it substantially complied with the contract *or* that it is excused from performance. *See Spancrete of Ill., Inc. v. Brickman*, 69 Ill.App.3d 571, 26 Ill.Dec. 423, 388 N.E.2d 47, 51 (1979).

Debtor acknowledges that it has defaulted on the contract between the parties (Supplemental Am. Objection ¶ 117), so it cannot say that it performed all of its obligations. However, "[n]on-performance of one party is excused when that performance is prevented by the actions of the other party." *In re Edgewater Med. Ctr.*, 373 B.R. 845, 858 (Bankr.N.D.Ill.2007); *accord Yale Dev. Co. v. Oak Park Trust & Sav. Bank*, 26 Ill.App.3d 1015, 325 N.E.2d 418, 422 (1975) ("A party who deliberately prevents the fulfillment of a condition on which his liability under a contract depends cannot take advantage of his own conduct and claim that the failure of the fulfillment of the condition defeats his liability."). Debtor's allegations suggest that it was excused from performance: it claims to have attempted to settle the condemnation proceeding and would have used the funds it received to repay CenterPoint a large part of the loan, but CenterPoint prevented Debtor from doing so.

Debtor might well have been able to manage the remaining debt if the MPEA condemnation award had been negotiated and proceeds paid to CenterPoint. While the condemnation award would not have comprised the entire mortgage debt. Debtor had other parcels of value as described in earlier valuation rulings, *see In re Olde Prairie Block Owner, LLC*, No. 10 B 22668, 2010 WL 4512820 (Bankr.N.D.Ill. Oct.29, 2010) (Bankr. Docket No. 313), and receipt of a condemnation award could have been key to ability to repay the entire debt. Moreover, the pleadings imply that CenterPoint was on a tactical path to acquire the property instead of loan repayment. Therefore, Debtor's failure to repay CenterPoint the debt when due is not cause for dismissal of its breach of contract claim.

### C. Debtor Does Not Allege That CenterPoint Breached its Own Contractual Right

CenterPoint's third argument is that it cannot, as a matter of law, breach its own contractual right to control the condemnation. This argument fails. Debtor does not complain that CenterPoint's decision to assert its contractual right was somehow improper. Rather, it complains that CenterPoint breached the duty of good faith and fair dealing in the manner in which it asserted its right so as to defeat recovery of condemnation proceeds.

Therefore, the Motion to Dismiss Count III will be denied.

### COUNT IV: ASSERTED BREACH OF FIDUCIARY DUTY

▇▇ Although debtor-creditor relationships are not fiduciary relationships as a matter of law, a particular creditor may be a fiduciary of a particular debtor in certain circumstances. *Pommier v. Peoples Bank Marycrest*, 967 F.2d 1115, 1119

(7th Cir.1992). A fiduciary relationship exists

> ... when one person places trust and confidence in another who, as a result, gains influence and superiority over the other. The relationship may arise as a matter of law, such as between agent and principal, or it may be moral, social, domestic, or personal based upon the particular facts.... Factors to be considered in determining whether a fiduciary relationship exists include the degree of kinship, disparity of age, health, mental condition, education and business experience between the parties, and the extent to which the allegedly servient party entrusted the handling of his business and financial affairs to the other and reposed faith and confidence in him.

*Citicorp Sav. of Ill. v. Rucker*, 295 Ill. App.3d 801, 230 Ill.Dec. 153, 692 N.E.2d 1319, 1325 (1998) (citations and quotation marks omitted). Put another way, "such a relationship may occur where one party, due to a close relationship, relies heavily on the judgment of another." *Choi v. Chase Manhattan Mortgage Co.*, 63 F.Supp.2d 874, 884 (N.D.Ill.1999) (finding that lender acting as escrowee had fiduciary relationship with depositor-borrower). The essence of a relationship that qualifies under this doctrine is that the subservient party must be shown to have placed faith and trust in the conduct of affairs by the dominant party. *See Rucker*, 230 Ill.Dec. 153, 692 N.E.2d at 1325.

█ In Count IV, Debtor seeks damages from breach of an asserted fiduciary duty that arose when CenterPoint took control of the condemnation proceeding but then failed to resolve that proceeding. Debtor argues that when CenterPoint took control of the condemnation proceeding, it did so as a service provider to Debtor and therefore owed a fiduciary duty akin to an attorney or an accountant. However, the facts alleged by Debtor belie any assertion that Debtor placed any faith or trust in CenterPoint's judgment. First, the parties included the condemnation clause in their contract at CenterPoint's insistence and over Debtor's objection. Second, when the MPEA filed the condemnation proceeding, Debtor took active steps to bring it to a resolution by filing a traverse and motion to dismiss the proceeding, by fighting CenterPoint's attempt to take control of the proceeding, and by engaging in settlement discussions with the MPEA without involving CenterPoint in those discussions. These actions show that Debtor did not rely on CenterPoint or place any faith or trust in CenterPoint's management of the condemnation proceeding. Therefore, Debtor did not demonstrate a fiduciary relationship between the parties, and Count IV must be dismissed for failure to state a plausible claim for breach of fiduciary duty.

## COUNT V: ASSERTED NEGLIGENCE IN TORT

Debtor has pleaded that CenterPoint was under a general duty of care when it asserted control the condemnation proceeding, and that CenterPoint breached that duty by failing to accept the March 2008 settlement offer, by interfering with Debtor's attempts to settle with the MPEA, and by taking no action to resolve the condemnation action.

█ Under Illinois law, a plaintiff "cannot recover for solely economic loss under the tort theories of strict liability, negligence and innocent misrepresentation." *Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443, 453 (1982). However, "[w]here a duty arises outside of the contract, the economic loss doctrine does not prohibit recovery in tort for the negligent breach of that duty." *Congregation of the*

*Passion, Holy Cross Province v. Touche Ross & Co.,* 159 Ill.2d 137, 201 Ill.Dec. 71, 636 N.E.2d 503, 514 (1994) (accountant malpractice action not barred by *Moorman* ). That is, "where something other than contract gives rise to a duty (such as an attorney's professional duty to provide competent representation) the *Moorman* doctrine does not preclude recovery for breach of that duty in tort." *Neumann v. Carlson Envtl., Inc.,* 429 F.Supp.2d 946, 952 (N.D.Ill.2006).

■ However, any duty that Debtor asserts to be owed by CenterPoint with respect to the condemnation proceeding was entirely based on the contractual provision granting CenterPoint control over that proceeding. The cases Debtor relies on are not applicable, as they all rest on special relationships (attorney-client, accountant-client, escrowee-escrower, and the like) for which the law imposes a duty regardless of contractual terms. Here, the parties' only relationship was contractual, and no extracontractual duty arose. Therefore, Debtor's negligence claim is barred by the economic loss doctrine enunciated in *Moorman,* and Count V will be dismissed.

## CONCLUSION

For reasons discussed above, Counts I, IV, and V will be dismissed by separate orders. The Motion to Dismiss Count III will be denied. Count II has been stricken earlier for reasons then stated with leave to file an amended Count (Order on Mot. of CenterPoint to Dismiss [Docket No. 286] ), and final disposition of the Motion against that Count will be dealt with separately.

CenterPoint and Debtor litigated CenterPoint's alleged misconduct in an Illinois court for some time before Debtor's bankruptcy was filed. Some of that same alleged misconduct is the basis for Debtor's Counts I, IV, and V here. During that litigation, Debtor repeatedly sought to satisfy the state court as to legal sufficiency of its allegations, and some pleadings on issues now asserted in its counterclaim were dismissed by the state court judge, but not with finality. Given that history, as well as the need for the parties to focus on viable pleadings of any remaining counterclaim Count scheduled for trial in February, Counts I, IV, and V should be considered for dismissal with prejudice against those actions being asserted again in this or any other court, and with an order with final effect thereon entered in favor of CenterPoint.

Accordingly, the parties will brief the issue of whether dismissal of those Counts should be with finality and prejudice under Rule 41(b) Fed.R.Civ.P. [made applicable by Fed. R. Bankr.P. 7041] on the following schedule:

CenterPoint on or before December 1, 2010;

Debtor on or before December 7, 2010; and

CenterPoint Reply on or before 3:00 P.M. on December 9, 2010.

Courtesy copies of these filings, along with separate draft orders proposed by each party as to each Count, will be delivered into Chambers to the law clerk. Counts I, IV, and V are set for status and entry of separate orders on the CenterPoint Motion to Dismiss on December 10, 2010, at 11:30 A.M.