SPANCRETE OF ILLINOIS, INC., *et al.*, Plaintiffs-Appellees, *v.* JOSEPH M. BRICKMAN *et al.*, Defendants-Appellants.

First District (1st Division)   No. 77-462

Opinion filed February 26, 1979.

Robert J. Brickman and Sidney Z. Karasik, both of Chicago, and Gerson I. Gluck, of Waukegan, for appellants.

D. Kendall Griffith, Douglas M. Reimer, and Thomas L. Browne, all of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago, for appellees.

Mr. JUSTICE McGLOON delivered the opinion of the court:

The instant appeal involves an action by subcontractors to enforce collection of a claim for labor and materials furnished by plaintiffs on a construction project. The complaint, as amended, alleged that the corporate defendant, J. M. Brickman Mid-West Corp., had assumed the liability of the project owner and that the individual defendant, Joseph M. Brickman, had personally guaranteed payment of a promissory note given in payment of the claim. Defendants filed an answer to the complaint and a counterclaim alleging that plaintiffs had failed to perform certain contractual obligations and demanding money damages. Pursuant to plaintiffs' motion, the trial court granted summary judgment in favor of plaintiffs on the amended complaint in the amount of $240,000

plus 8% interest. The case was subsequently assigned for trial on the counterclaim and after denying a motion for a continuance, the trial court entered an order on January 3, 1977, dismissing the counterclaim for want of prosecution. Defendants then filed a motion to vacate the order of January 3, 1977. On January 17, 1977, the trial court ordered that the motion to vacate be denied. Defendants now appeal from the order granting summary judgment in favor of plaintiffs on the amended complaint, the order dismissing the counterclaim, and the order denying the motion to vacate the order of dismissal.

On appeal defendants argue (1) that the trial court erred in entering summary judgment in favor of the plaintiffs because (a) there existed genuine issues of material fact presented by the pleadings and documentary evidence and (b) the documents filed in support of the motion for summary judgment do not support the relief granted; and (2) that the trial court abused his discretion in dismissing the counterclaim for want of prosecution.

We affirm in part, reverse in part, and remand.

In July of 1972, plaintiffs filed their complaint alleging that they were subcontractors of Y-K Builders on a project known as The Galaxy Apartments in Mt. Prospect, Illinois; that they performed labor and furnished materials pursuant to their subcontracts; that although they were ready, willing and able to complete their jobs, Y-K Builders breached the contract in failing to pay the plaintiffs as required by their contract; and that as a result of this breach the plaintiffs ceased work on the project. The complaint went on to allege that Spancrete of Illinois, Inc., filed suit to foreclose its mechanic's lien; that the other plaintiffs, Campione Construction Company, Inc., Rand Steel, Inc., Otis Elevator Company and Niles Construction Company, were either named as defendants or intervened in the suit to foreclose the mechanic's lien; that during the prosecution of the suit, Joseph M. Brickman and J. M. Brickman Mid-West Corp. asserted a claim of interest in the property, appeared in court at a hearing on December 1, 1967, and reached an agreement with plaintiffs. The complaint alleged that the agreement provided that the Chicagoland Investment Corporation execute a promissory note of $240,000 in favor of plaintiffs in return for plaintiffs' promise to complete their contracts. The note also provided that if the first installment of the note was not paid on its due date, October 1, 1970, then the entire amount of the note would be due immediately. The complaint further alleged that defendants failed to make the first payment on the note when due; that plaintiffs then agreed to extend the time for payment on the first installment in consideration for a higher interest rate; and that despite the fact that the plaintiffs have fully performed all duties and obligations under their construction contracts

and the subsequent settlement agreement, no payment had been received on the note, the underlying construction contracts, or the settlement agreement. The complaint also alleged that subsequent to the execution of the note, Chicagoland Investment Corporation merged with J. M. Brickman Mid-West Corp., which assumed full liability for the obligations of Chicagoland Investment Corporation. The complaint prayed for judgment against Joseph M. Brickman and J. M. Brickman Mid-West Corp. in the amount of $240,000 together with interest and costs.

Pursuant to defendant Joseph M. Brickman's motion, the trial court dismissed the complaint because it failed to state a cause of action against him individually. Plaintiffs, pursuant to leave of court, then filed an amended complaint which added the allegation that Joseph M. Brickman made a personal guaranty on the record in open court to pay the plaintiffs 90% of their expenditures on the construction project, and despite the fact that the plaintiffs performed all contractual obligations, Joseph M. Brickman refused to make any payment on his personal guaranty to the plaintiffs.

The answer of J. M. Brickman Mid-West Corp. admits that plaintiffs performed services and supplied materials prior to the commencement of the foreclosure action on the mechanic's lien; that the J. M. Brickman Mid-West Corp. was a contractual seller of the property sought to be foreclosed; that pursuant to a hearing in open court, the alleged settlement agreement was reached wherein the plaintiffs agreed to complete construction on the Galaxy Apartments in return for the promissory note of Chicagoland Investment Corporation; that Chicagoland executed the promissory note attached to the complaint; that the first payment was not paid when due; and that Chicagoland merged with J. M. Brickman Mid-West Corp.

Defendants later filed an amended answer to the amended complaint. In response to count I, the amended answer alleged that there was a failure of consideration due to plaintiffs' failure to complete the work within a reasonable period of time, failure to perform the work in a good and workmanlike manner, and installation of defective materials. In response to count II of the amended complaint, the individual defendant admitted in the amended answer that he was not a party to the foreclosure action and that he had refused to make payments to plaintiffs. The amended answer of Joseph Brickman also raised six affirmative defenses to count II of the amended complaint, viz., that there existed no privity of contract between plaintiffs and himself; that at the time of his personal guaranty of the corporate obligation, neither the promissory note nor the corporation were in existence; that the statute of frauds bars the debt; that his oral promise is unenforceable because the promissory

note is complete on its face and all prior negotiations are merged into that document; that the transcript of the court proceedings upon which the plaintiffs base their claim of a personal guaranty is not certified; and that the plaintiffs are guilty of laches in the institution of this litigation.

The defendants' counterclaim alleges that the counterdefendants failed to fully perform their contractual obligations in connection with the Galaxy Apartments project and that as a direct result of this failure the counterplaintiffs suffered monetary damages from the loss of interim and end loan mortgage commitments, higher interest rates on substitution mortgages, costs of corrective work, and the like.

On July 11, 1975, the trial court granted the plaintiffs leave to file instanter their motion to strike and dismiss the defendants' counterclaim. On August 1, 1975, J. M. Brickman Mid-West Corp. filed its reply to this motion. The trial court never ruled on this motion.

Defendants contend that the trial court erred in entering summary judgment on plaintiffs' complaint because there existed genuine issues of fact presented by the pleadings and documentary evidence. Before we can resolve the question of whether the trial court properly entered summary judgment we must consider a preliminary question raised by plaintiffs. Plaintiffs argue that defendants' brief raised only one disputed question of fact which would preclude the entry of summary judgment, viz., whether plaintiffs performed their obligations under the contract. Plaintiffs urge that any other alleged questions of fact not raised in defendants' brief are waived. We note that at various places in their brief defendants refer to these disputed questions of fact. They state that the complaint and amended complaint repeatedly assert that "there was a failure of consideration" and that the plaintiffs counterdefendants have been "in gross and wilful default of all their duties and obligations as specified in the answer to the bill of particulars." They also state that the affidavits "failed to refute defendants' delegations [*sic*] and affirmative defenses to the effect that plaintiffs had breached their contract. * * *" After careful consideration of defendants' brief, we conclude that the only question of fact therein urged is whether plaintiffs performed their obligations under the contract. As a result all other questions are waived. See *Wright v. McGee* (1970), 131 Ill. App. 2d 522, 264 N.E.2d 882.

■■ However, after examining the pleading we note that defendants, in their amended answer, allege that plaintiffs failed to complete the work within a reasonable period of time or in a good and workmanlike manner. They further state in that amended answer that plaintiffs installed defective materials. We believe the quality of plaintiffs' work and materials is included in the question of whether plaintiffs performed their obligations under the contract and that these questions were not waived.

We next reach the issue of whether the trial court erred in entering

summary judgment in plaintiffs' favor. Section 57(3) of the Civil Practice Act (Ill. Rev. Stat. 1975, cp. 110, par. 57(3)) provides that summary judgment shall be rendered under the following circumstances:

> "\* \* \* if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment or decree as a matter of law."

■■■ In the instant case, defendants filed no counteraffidavits in response to the motion for summary judgment. Under such circumstances, any pleadings filed by the defendants can be considered for the limited purpose of determining what issues are raised by the controversy. (*Ohio Oil Co. v. Yacktman* (1976), 36 Ill. App. 3d 255, 343 N.E.2d 544.) Where well alleged facts in an affidavit are not contradicted by a counteraffidavit, they must be taken as true notwithstanding contrary averments in an adverse party's pleadings. (*Fooden v. Board of Governors of State Colleges and Universities* (1971), 48 Ill. 2d 580, 272 N.E.2d 497.) However, it is well settled that even though the party opposing the motion for summary judgment fails to file counteraffidavits, the moving party should not be awarded summary judgment unless the affidavits filed in support of the motion establish the judgment as a matter of law. (*Ohio Oil Co. v. Yacktman* (1976), 36 Ill. App. 3d 255, 343 N.E.2d 544.) It is a general principle of law that absent some excuse for nonperformance, one seeking to recover on a contract must allege and prove that he has substantially complied with all the material terms of the agreement. (*George F. Mueller & Sons, Inc. v. Northern Illinois Gas Co.* (1975), 32 Ill. App. 3d 249, 336 N.E.2d 185.) In determining whether there exists a genuine issue of material fact, the court has the duty to consider the entire record (*Hoel v. Crum & Forster Insurance Co.* (1977), 51 Ill. App. 3d 624, 366 N.E.2d 901), and to construe the evidence strictly against the moving party and liberally in favor of the opponent. (*Lewis v. Illinois Institute of Technology* (1977), 50 Ill. App. 3d 418, 365 N.E.2d 1079.) Although summary judgment is a means to avoid expense and the delay of trial (*Rivan Die Mold Corp. v. Stewart Warner Corp.* (1975), 26 Ill. App. 3d 637, 325 N.E.2d 357) the right of the party moving for summary judgment must be free from doubt. *Manahan v. Daily News-Tribune* (1977), 50 Ill. App. 3d 9, 365 N.E.2d 1045.

■ Plaintiffs attached numerous exhibits to their motion for summary judgment. We have examined all these exhibits and find that none of them touch upon the question of whether the plaintiffs built the subject building in a workmanlike manner or provided materials of a quality called for in the contract. Our examination of the record shows that this was a question of fact raised by the pleadings. Moreover, it was an item plaintiffs had to

prove to entitle them to judgment as a matter of law. (*Endurance Paving Co. v. Pappas* (1969), 117 Ill. App. 2d 81, 253 N.E.2d 895.) Since there was no affidavit presented with the motion for summary judgment establishing that the project was built in a workmanlike manner with materials of a quality provided in the contract, we conclude that plaintiffs did not establish as a matter of law that they were entitled to summary judgment. Since a genuine issue of material fact was present, we conclude that the trial court erred in entering summary judgment.

Defendants also contend that the trial court abused its discretion in dismissing the counterclaim. According to the record, both the complaint and counterclaim came up on the trial call on May 15, 1975, on which date the court ordered that the cause be continued to June 17, 1975. On June 18, 1975, the cause was assigned to a judge who set the cause for a pretrial on July 14, 1975. On July 14, 1975, the cause was ordered returned to the trial call. After 15 additional continuances, the cause was assigned for trial on January 3, 1977. On that date, the trial court dismissed the counterclaim for want of prosecution. In its order the court noted that counsel for counterplaintiffs had represented to the court that Joseph Brickman was in Mayo Clinic in Rochester, Minnesota and unable to appear for trial; that counterplaintiffs had retained trial counsel to prosecute their claim; and that said counsel was not present and that counterplaintiffs' attempts to reach trial counsel had been unsuccessful. The order also noted that there was no appearance of trial counsel in the court's file.

On January 11, 1977, the counterplaintiffs moved to vacate the order dismissing the counterclaim. Attached to the motion was the affidavit of trial counsel indicating that he was retained to try the counterclaim and that due to a misunderstanding he did not appear at the January 3, 1977, trial call. The affidavit further stated that Mr. Brickman was ill in Mayo Clinic and unavailable for trial. Attached to the affidavit was a letter from a doctor indicating that Mr. Brickman was seriously ill and would be undergoing active treatment for the next several weeks. The motion to vacate was continued to January 13, 1977. At the hearing on the 13th of January, counterdefendants made a settlement demand. When counsel for counterplaintiffs stated that he needed at least 24 hours to respond to the demand, the court continued the motion to January 17, 1977. In granting this continuance, the trial court commented in pertinent part:

"Now, in the event that this case cannot * * * be settled, I would advise the parties to be ready for trial. You have, then, ample time if you find it necessary to take depositions of the person who is not here * * *."

The court also indicated that the lawyers had represented to the court that

Mr. Brickman was in Mayo Clinic in Rochester, Minnesota, but had not advised the court that he was unable to have his deposition taken. The court further stated that Rochester was only a short distance from Chicago and expressed his concern for the interest accumulating on the summary judgment. The court then stated:

> "I am not going to strike the counterclaim. If you can show just cause by some information that you cannot take the evidence deposition * * *."

At the January 17, 1977, hearing, the court asked counsel for the counterplaintiffs to report on the availability of Mr. Brickman for an evidence deposition. Counsel for the counterplaintiffs responded that they were unable to contact the treating physician at Mayo Clinic but they did have a conference with a doctor who offices in the Loop and who treated Mr. Brickman before his entry into Mayo Clinic. After counsel indicated that the doctor had told him that Mr. Brickman was undergoing treatment for cancer and unable to have his deposition taken at the present time, the court commented:

> "The thing that really concerned me about this case, and I don't hear anything different from what I have heard the first day that the case came in before me, the same refrain. What I am trying to do, and I think if you were sitting here you would try to do the same thing, if you want to be fundamentally fair, what good is a judgment to a person if he can't enforce it?
>
> What I am trying to do is get this case moving. The posture of what Mr. Brickman has told me and an offer of the Bar is the same thing that in effect that he said to me a week or so ago. Everything is hearsay. Everything is hearsay * * * There has been nothing shown affirmatively to this Court that his father is not able to sit and take a few questions.
>
> What you are showing is that there is no assurance that this case will go to trial in 1977 or 1978 from what I got here."

The court then denied the counterplaintiffs' motion to vacate the order of dismissal.

We believe the court acted within its discretion in dismissing the counterclaim. Courts have the inherent and necessary power to dismiss lawsuits for want of prosecution to prevent undue delays in the disposition of pending cases and to avoid congestion in the progress of trial calendars. The circumstances justifying the dismissal of an action are governed by the facts of the particular case and a determination of whether there exists a diligent prosecution rests within the sound discretion of the trial court. (*Bender v. Schallerer* (1973), 9 Ill. App. 3d 951, 293 N.E.2d 411.) The court, however, must give more weight to basic

concepts of fundamental fairness and justice than to procedural matters. (*Ryan v. Dixon* (1975), 28 Ill. App. 3d 463, 328 N.E.2d 672.) These concepts of fundamental fairness and justice must, however, take into account the effect of unnecessary delays on the counterdefendants and the disservice to other litigants. *Bender v. Schallerer* (1973), 9 Ill. App. 3d 951, 293 N.E.2d 411.

In the instant case, the trial court's order dismissing the counterclaim for want of prosecution was entered almost four years after the counterclaim was filed. During these four years the court had granted continuances on numerous occasions. In addition, the court stayed execution of the judgment awarded plaintiffs on their complaint pending the outcome of the counterclaim. The extended delays in the prosecution of the counterclaim thus deprived the plaintiffs of the fruits of their judgment on the complaint.

■■ We are mindful of the facts alleged in counsel's affidavit attached to the motion to vacate the order of dismissal, viz., that trial counsel for the counterplaintiffs did not appear at the hearing of January 3, 1977 due to a misunderstanding with co-counsel and that a key witness, Joseph M. Brickman, was ill in Mayo Clinic in Rochester. However, it is apparent from the colloquy between the trial court and counsel at the hearing on the above motion, that the trial court was willing to reopen the cause, but first wanted the parties to visit Mayo Clinic in Rochester to take Mr. Brickman's deposition or obtain satisfactory proof that Mr. Brickman was unable to sit for a deposition at present and some indication as to when he would be able to testify. The trial court thus continued the hearing on the motion to January 17. At the hearing on January 17, 1977, counsel for counterplaintiffs had not visited the Mayo Clinic nor had he talked to any of the treating physicians there. He represented to the court that he had talked to a doctor who had treated Mr. Brickman prior to his going to Mayo Clinic and that that doctor had told him Mr. Brickman was undergoing treatment and could not have his deposition taken at that time. What counsel did not present at the hearing was a statement from the treating physician at Mayo Clinic, an affidavit from any doctor, nor any commitment whatsoever concerning a date at which Mr. Brickman would be available for a deposition or for trial. The trial court noted all of the above shortcomings in denying the motion to vacate the order of dismissal. Under the above circumstances, we conclude that the trial court acted within its discretion in ordering that the motion to vacate the order of dismissal be denied.

For the foregoing reasons, we affirm the orders of the trial court dismissing the counterclaim and denying the motion to vacate that order of dismissal. We further reverse the order of the trial court granting

summary judgment in plaintiffs' favor on the complaint and remand that cause for further hearings consistent with this opinion.

Orders affirmed in part, reversed in part; cause remanded.

O'CONNOR and BUCKLEY*, JJ., concur.

---

* Justice Buckley participated in this decision while assigned to the Illinois Appellate Court, First District.