2026 IL App (1st) 252359-U

FIRST DIVISION
June 29, 2026

No. 1-25-2359

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| APEX ADVANCED TECHNOLOGY, LLC dba APEX GROUP, a Virginia limited liability company, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 24 L 4680 |
| TDS METROCOM, LLC, a Delaware limited liability company, | ) ) ) | Honorable |
| Defendant-Appellant. | ) ) ) | Daniel J. Kubasiak, Judge Presiding. |

_____

JUSTICE HOWSE delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment.

ORDER

¶ 1    *Held*:    The judgment of the circuit court of Cook County granting plaintiff's motion for summary judgment is reversed. A genuine issue of material fact exists as to whether plaintiff performed its obligations under the parties' contract, precluding summary judgment on plaintiff's complaint for breach of contract.

¶ 2    Plaintiff, Apex Advanced Technology, LLC (Apex) filed a complaint for breach of contract against defendant, TDS Metrocom, LLC (TDS) based on TDS's failure to pay Apex's invoices. TDS argued that genuine issues of material fact precluded summary judgment. The circuit court of Cook County entered summary judgment in favor of plaintiff and against defendant. For the following reasons, we reverse.

¶ 3                                BACKGROUND

¶ 4    On April 29, 2024, plaintiff, Apex Advanced Technology, LLC (Apex), filed a complaint for breach of contract (count I), breach of implied duty of good faith and fair dealing (count II), unjust enrichment (count III), and *quantum meruit* (count IV), against defendant, TDS Metrocom, LLC (TDS). In February 2022, the parties entered into a contract titled "Professional Services Agreement No. CW2650628 (hereinafter "PSA" or the contract). Defendant was engaged in projects across the United States. The PSA provided that the parties would enter into multiple documents titled "Statement of Work" (SOW). Plaintiff was to perform certain contracting and/or engineering work for defendant pursuant to a SOW for various projects across the U.S. The PSA provided procedures for plaintiff to submit invoices to defendant for its work and for defendant to inspect plaintiff's work and/or to challenge plaintiff's invoices. The PSA governed all the SOWs for the projects for which plaintiff performed work. The complaint identified seven (7) projects and related invoices at issue.

¶ 5    The specific provisions in the parties' contract relevant to this appeal are as follows:

"2. Services and Scope of Work

Upon the terms and subject to the conditions contained herein, Contractor agrees to provide to TDS the services described herein and on any Schedules attached hereto or entered into by the parties, from time, to time during the term of this Agreement (the 'Services'). Such Services shall be provided in accordance with the provisions of this Agreement and, if applicable, a Statement of Work or Service Order or Schedule ('Schedule') attached hereto or entered into by the parties, from time to time, during the term of this Agreement.

* * *

Fees and Expenses

Contractor agrees to invoice TDS in accordance with Exhibit D. * * *

* * *

7. Acceptance of Services and Deliverables

TDS, with Contractor's cooperation and assistance, may conduct acceptance tests to verify whether the Services and/or Deliverables conform to the applicable Specifications. TDS will have 60 days after completion of the applicable Services or delivery of the applicable Deliverables, or such other period as may be agreed upon in the applicable SOW (the 'Acceptance Period'), to test the Services and Deliverables. If TDS notifies Contractor in writing of any nonconformities with the Specifications in any of the Services or Deliverables (each a 'Nonconformity') within the applicable Acceptance Period, Contractor will promptly correct such Nonconformities at its own expense and will notify TDS when the corrections are complete. TDS then will have the right to test the corrected Services or Deliverables, as upon the initial completion of the applicable Services or Deliverables. If Contractor fails to correct a Nonconformity within 10 business days after receiving written notice thereof, TDS may terminate the Services under the applicable SOW, and Contractor will refund the fees and expenses paid by TDS to Contractor for the applicable Nonconforming Services or Deliverables and any other Services or Deliverables that are thereby rendered to be of less-than-expected utility to TDS. If TDS does not notify Contractor of any Nonconformities within the Acceptance Period, TDS will be deemed to have accepted the Services or Deliverables. Such acceptance will not reduce any rights

of TDS under any warranty provisions in this Agreement or any applicable SOW. [(Hereinafter, 'the inspection provision.']

\* \* \*

17.4. Waiver. A failure of either party to exercise any right provided for herein, shall not be deemed to be a waiver of any right hereunder."

¶ 6     Exhibit D to the PSA governing invoices provided, in pertinent part, as follows: "5. INVOICING.

5.1. Supplier will generate invoices for the Services and Deliverables on a regular basis (but no less frequently than monthly) for time and materials engagements \*\*\* or at agreed-upon milestones or period payment dates for fixed price engagements, as set forth in the applicable SOW. TDS will not be obligated to pay any invoices which are received more than 180 days after the acceptance of the associated Services or Deliverables (or more than 180 days after the provision of the Services or Deliverables for a time and materials engagement).

\* \* \*

5.2. Supplier will submit all invoices and supporting documentation via email to TDS. Invoices and supporting documentation should be submitted in a combined PDF format. Each email submission should only include one invoice. [(Exhibit D listed the email address to which to send invoices as tds.povendorinv@tdsinc.com)]

6. PAYMENT.

All payments of *undisputed* invoices by TDS to Supplier will be due 45 days after TDS's receipt of the applicable invoice. \*\*\* If TDS believes that any

adjustments to any invoices are necessary, then within 45 days after TDS's receipt

of such invoice, TDS will notify Supplier in writing detailing the nature and basis

of the requested adjustment. TDS may withhold any amounts that are the subject

of a good-faith dispute. Supplier will continue to perform during the resolution of

any such dispute. Within 30 days after TDS notifies Supplier of such a dispute,

the parties will negotiate in good faith to resolve such dispute. [(Hereinafter, 'the

payment provision' or 'the 45-day payment provision.')]" (Emphasis added.)

¶ 7    The PSA included a form for the Statement of Work for each project. The form SOW included sections for "Scope and Objectives," "Tasks to Be Performed by Supplier," and "Deliverables to Be Produced as a Result of Service." The complaint identified the projects at issue by their geographic location, as follows:

      1.  The Leslie County Project

      2.  The Altoona, Wisconsin Project

      3.  The Menomonie, Wisconsin Project

      4.  The Spokane (WA) Project

      5.  The Helena (MT) Project

      6.  The HHK (Heyburn, Hansen, and Kimberly, ID) Project

      7.  The Caldwell (ID) Project

¶ 8    Plaintiff attached the SOW for each project at issue. Each SOW stated that the work was to be performed according to specifications and in a format as required by [defendant] as presented in the Statement of Work, and as completed, and delivered by [plaintiff] and accepted by defendant." Each SOW listed "Milestones" and start and end dates for each milestone. Each

SOW also listed a date by which the "entire engineering package [was] to be completed." The SOW for the Spokane Project included a "Certificate of Completion" signed by both parties.

¶ 9    The contract provided that plaintiff was to complete work pursuant to the SOWs, which included deliverables at milestone dates. Pursuant to the inspection provision, when plaintiff provided defendant with a deliverable, defendant then had 60 days to inspect the work and request any corrections. If defendant did not notify plaintiff of any nonconformities within that period, defendant was deemed to have accepted plaintiff's work. Plaintiff was required to submit its invoices for that work pursuant to Exhibit D of the PSA. The invoicing provision in section 5.1 of Exhibit D provided that plaintiff would generate invoices for its deliverables "at agreed upon milestones *** as set forth in the applicable SOW" or at alternative times agreed upon by the parties. Under the invoicing provision, defendant was not obligated "to pay any invoices which are received more than 180 days after the *acceptance* of the associated Services or Deliverables." The payment provision then required defendant to pay undisputed invoices within 45 days after receipt or to notify plaintiff in writing of any requested adjustment within that period. Thus, reading these provisions together, the contract contemplated that plaintiff would perform services and deliverables under the applicable SOWs, defendant would have an acceptance period to identify nonconformities, and plaintiff would submit invoices to defendant in accordance with Exhibit D. Defendant's failure to dispute an invoice within the payment period may bear on whether a particular invoice was disputed, but it does not eliminate plaintiff's threshold burden to establish performance as an element of its breach-of-contract claim.

¶ 10    For each project, plaintiff's complaint alleged the date the parties entered into a SOW for the project, the dates on which plaintiff submitted invoices for its work on the project, the date plaintiff allegedly completed its SOW on the project, and that defendant "accepted [plaintiff's]

work on the [project] without issue or complaint and [defendant] never objected to, or disputed [plaintiff's] invoices." The last dates on which plaintiff submitted invoices for each project, as numbered above, was (1) November 30, 2023, (2) October 31, 2023, (3) October 31, 2023, (4) November 30, 2023, (5) January 25, 2024, (6) December 20, 2023, and (7) January 22, 2024.

¶ 11     Plaintiff's complaint alleged that defendant approved each of plaintiff's invoices listed in the complaint. For each project, plaintiff alleged that more than 45 days had passed since plaintiff submitted its last invoice to defendant and that defendant had refused to pay plaintiff for its work. Plaintiff's complaint in count I for breach of contract alleged that plaintiff had "performed all duties required of it under the respective SOWs," that defendant "breached its contracts with [plaintiff] when it failed and refused to pay [plaintiff] for its work satisfactorily performed," and sought damages of $1,450,138.33. Count II alleged that defendant violated its obligation of good faith and fair dealing; count III alleged that defendant unjustly retained the benefit from plaintiff's work without payment to plaintiff; and count IV alleged that defendant accepted plaintiff's work and had not paid plaintiff for its services.

¶ 12     On June 24, 2024, defendant answered plaintiff's complaint. Defendant answered, in pertinent part to this appeal, by admitting "the existence of the invoices" but denying that it approved plaintiff's invoices. For each project, defendant denied that plaintiff "completed its scope of work *** in a professional and workmanlike manner, including, by improperly demanding payments that were not owed under the parties' agreement." Defendant denied that it accepted plaintiff's work without issue or complaint and without objecting to or disputing plaintiff's invoices, for any project.

¶ 13     On October 1, 2024, plaintiff filed a motion for summary judgment on count I of plaintiff's complaint. Plaintiff's motion for summary judgment argued that plaintiff performed its

work in a series of milestones and sent defendant invoices "as the milestones were reached." Plaintiff argued that it satisfactorily completed its work and "timely and properly submitted its invoices to [defendant] in compliance with the express terms of the PSA." Plaintiff argued that defendant never notified plaintiff of any dispute or objection to plaintiff's invoices, defendant did not allege that plaintiff did not meet any milestone on any of the projects, and defendant never paid plaintiff for any of its work on the projects at issue.

¶ 14    Plaintiff argued that it must establish that the parties entered a valid and enforceable contract, that plaintiff substantially performed its obligations under the contract, that defendant breached its obligations under the contract, and that plaintiff suffered damages. Plaintiff argued that each element is "conclusively established and there is no issue of material fact regarding its breach of contract claim. Plaintiff argued that defendant cannot create a genuine issue of fact as to plaintiff's satisfactory completion of its work because (1) the time to object to plaintiff's invoices has expired, (2) the contract requires defendant to pay plaintiff for all undisputed amounts and may only retain money subject to a good faith dispute, (3) defendant has accepted and is using plaintiff's work, and (4) any allegations regarding plaintiff's work made only after plaintiff filed suit are not made in good faith. Plaintiff argued that defendant's failure to pay its invoices within 45 days, and defendant's failure to provide plaintiff with written notice of the nature of any good faith dispute of the amounts withheld, constituted a material breach of the contract.

¶ 15    In support of its argument that plaintiff completed all work and reached all milestones on each project, plaintiff relied on the affidavit of Sam Farhat. Farhat is plaintiff's Executive Vice President. Farhat averred that plaintiff "completed the engineering work assigned to it by [defendant] for each of the SOWs" at issue. Farhat attached the contract and SOWs for each

project to his affidavit. Plaintiff also supported its motion for summary judgment with the affidavit of Shailaja Babladi. Babladi is plaintiff's Vice President of Finance, Compliance, and Human Resources. Babladi averred, in pertinent part, that defendant "never notified [plaintiff] of any dispute or objection to any of the amount [*sic*] or format of [plaintiff's] invoices for its work on the SOW Projects, whether within 45-days of said invoice being submitted or anytime afterwards until this lawsuit was filed." Babladi averred that defendant never provided plaintiff with any notice detailing the nature and/or basis of any adjustment or deduction to plaintiff's invoices for any of the projects, nor did defendant allege that plaintiff did not meet any milestone for any project.

¶ 16    Babladi attached copies of plaintiff's invoices to her affidavit. One such invoice, related to the Leslie Project and dated November 30, 2023, lists in the "description" section of the invoice: "repayment of recovered funds from fraud claim." The majority of the remaining invoices listed a "milestone" related to the invoice.

¶ 17    On December 5, 2024, defendant filed its response to plaintiff's motion for summary judgment. In response, defendant disputed plaintiff's "central contentions" of fact that plaintiff (a) completed all the work required by the parties' agreements and (b) was never made aware of any issue with their work or invoices. Defendant alleged that the facts were that defendant did not conduct the work as required by the PSA; "many" of the invoices were not a correct or proper reflection of the scope of work defendant approved; plaintiff sent invoices before defendant agreed to the scope of the work needed; and many of the invoices "were either never received by [defendant,] never adjusted when revisions to the scope of work were requested, or represent other issues that do not reflect [defendant's] records of the project work." Defendant also contended that it "made multiple attempts to correct improper or incorrect work, both before

the invoices were generated and after the invoices were sent *** but [plaintiff] would not address or correct the issues."

¶ 18    Defendant stated examples of the aforementioned deficiencies for each project. Generally, defendant contended that plaintiff's invoices reflected work that plaintiff did not complete and that did not "reflect a scope of work approved" by defendant or were "prematurely sent before [defendant] approved the scope of work and validated the specifications for the work needed." Defendant also noted invoices it contended were paid and/or double-billed. For one invoice related to the Leslie County Project, defendant contended it was not paid because "it did not represent work associated with the Leslie County Project. There was no *** proper description of work for the amount requested."

¶ 19    Defendant argued that the pleadings and evidence on file established a genuine issue of material fact as to whether plaintiff performed its obligations under the PSA. Defendant argued that plaintiff's failure to substantially perform its obligations under the contract precluded its right to summary judgment. Defendant argued that the parties' agreement required that defendant "confirm and approve the work units and design strategy" before plaintiff began any work and before plaintiff invoiced defendant. Defendant contended that multiple of the invoices at issue represent work defendant had not finalized or approved before plaintiff started work or before plaintiff invoiced defendant. Defendant also argued that plaintiff failed to complete some work and that plaintiff completed some work unsatisfactorily "that required [defendant] to fix [the work] internally." Finally, defendant disputed that plaintiff reached certain milestones or completed particular phases of the project.

¶ 20    Defendant also argued that the pleadings and evidence on file established a genuine issue of material fact as to whether plaintiff properly generated the invoices at issue, whether the

invoices reflected the correct work, and whether the invoices accurately represented the amounts owed. Defendant argued that the parties' contract required plaintiff timely send defendant its invoices. Defendant contended that it did not receive some of the invoices at issue and that some of plaintiff's invoices were untimely. Defendant argued that the invoicing provision did not create a waiver of defendant's right nor did defendant intend that provision to bar its right to complain about plaintiff's work. Defendant argued that the unambiguous language of the payment provision enabled defendant to withhold payment where, as here, the amount claimed was subject to a good faith dispute. Defendant's response argued that its right to withhold payment based on a good faith dispute of plaintiff's work was not subject to any time limitation and its "unrestricted contractual right to withhold payment given a good faith dispute superseded the 45-day invoice payment window." Defendant argued that, at best, the alleged conflict between its absolute right under the "good faith dispute clause" and the 45-day payment provision created an ambiguity that precluded summary judgment.

¶ 21 Defendant attached the affidavit of Wade Soczka in support of its response. Soczka was defendant's Director of Engineering and Construction. Soczka's affidavit was dated December 5, 2024. Soczka averred that he investigated the invoices at issue but did not state a date of that investigation. Soczka averred to the facts contended above. Soczka averred specific defects in the invoices as to each project. Soczka averred that certain invoices were improper, never received, were late, did not match approved milestones, did not reflect an approved scope of work, or were "prematurely sent before [defendant] approved the scope of work and validated the specifications for the work needed." Soczka also averred that certain invoices were for work plaintiff failed to complete and listed the invoices.

¶ 22    Soczka attached copies of email exchanges in which plaintiff and defendant discussed the completion or changes to plaintiff's work. Many of the emails include requests by plaintiff for approval to submit invoices and defendant's approval of invoices. In some of the emails, plaintiff responds and explains issues defendant identified with plaintiff's work. Soczka attached additional email exchanges reflecting both internal communications and communications between plaintiff and defendant identifying defendant's complaints about plaintiff's work and efforts to correct defendant's issues with regard to various projects. Those emails include an email dated July 25, 2023, in which defendant, through Doug McCallister, defendant's "Sr. Mgr-OSP Engineering & Construction" stated specific issues regarding plaintiff's work and invoicing and requested plaintiff follow strict procedures from then on. The emails also include an August 3, 2023 email from Stacie Woodworth, defendant's "Director-New Market Development" in which defendant sought to follow up with plaintiff about an earlier meeting, on March 6, 2023, between the parties to discuss problems defendant had with plaintiff's performance and efforts to address those issues.

¶ 23    On December 18, 2024, plaintiff filed a Reply in Support of Motion for Summary Judgment. Plaintiff's reply contended that defendant's response to plaintiff's motion for summary judgment was "the first time [defendant] identified to [plaintiff] the specific invoices it claims to dispute, and the purported reasons for the dispute." Plaintiff argued that defendant is not withholding payment subject to a good faith dispute but is instead withholding all payments "no matter how meritless or trivial the excuse ** while simultaneously profiting off [plaintiff's] work."

¶ 24    The reply argued that since plaintiff "completed its engineering work" defendant has used plaintiff's work and is using it to market its services "all without paying anything to [plaintiff]

for its work." Plaintiff argued that defendant materially breached the contract by failing to comply with the unambiguous language in the contract that required defendant to "pay all undisputed amounts owing" unless defendant notified plaintiff of any disputes of any amounts within the 45-day payment period. Plaintiff argued that defendant also breached the contract by failing to notify plaintiff in writing of any issue or discrepancy within the 45-day payment period or to negotiate with plaintiff in good faith within 30 days after the payment period. Plaintiff argued that defendant never notified plaintiff of its purported dispute "regarding each and every invoice it identified in its Response" and defendant's actions are "particularly egregious" where *defendant* "refuses to conduct a good faith investigation into whether such amounts are actually disputed" or negotiate with plaintiff. Plaintiff argued that defendant's delay is inexcusable "because all of the emails, invoices, and other such records are [in defendant's] possession."

¶ 25    In support of its reply plaintiff attached a second affidavit by Babladi. Babladi averred that January 25, 2024, was the last date plaintiff submitted an invoice on the projects. Babladi averred that defendant raised issues with plaintiff's invoices but that plaintiff immediately corrected the invoices and resubmitted them as requested. Babladi averred that "every issue raised by [defendant] can be easily resolved *** based on a brief review of the records and emails between" the parties and that "these records are already in [defendant's] possession." Babladi's affidavit, regarding the Leslie County Project invoice for "repayment of recovered funds," averred that defendant attempted to pay plaintiff for invoices on that project but erroneously sent payment on those invoices to a fraudulent third-party. Babladi averred that defendant informed plaintiff it had recovered a portion of those payments and informed plaintiff to generate an invoice with the description "repayment of recovered funds from the fraud claim."

Babladi averred that she promptly complied with that request and that plaintiff agreed to the reduced amount as a "discount on its work for the Leslie County project."

¶ 26    Babladi further averred as follows:

"11.    Under the PSA, when [plaintiff] delivers its engineering services to [defendant, defendant] would subsequently review and request minor changes and adjustments. After [plaintiff] performs these minor tasks and corrections, [plaintiff] would upload the engineering deliverables to [defendant] ***. Thereafter, [defendant] would respond with certain 'validation errors' in the work *** and [plaintiff] would make the final adjustments and [a]fter this was done, [plaintiff] would send an invoice to [defendant.]

12.    However, for the 110 invoices referenced above for [various projects, defendant] revoked [plaintiff's] access *** on or about January 15, 2024, meaning the final *** steps described above, could not be completed by [plaintiff.]

13.    Notably, by the time the deliverables for [various projects] are uploaded ***, the vast majority of the engineering work needed for the respective projects have been completed and the data is in [defendant's] possession, meaning [defendant] could easily perform the remaining *** tasks and utilize [plaintiff's] work."

¶ 27    Babladi averred that defendant's revocation of plaintiff's access to defendant's system allowed defendant to retain plaintiff's work and prevented plaintiff "from performing the last few, minor steps necessary to strictly comply with the submission requirements of the PSA." Babladi also averred that defendant "never reached out to [plaintiff] to resolve its purported objections to [plaintiff's] invoices on the Projects within 30 days of [defendant] providing written notice to [plaintiff.]"

¶ 28    On March 13, 2025, the trial court entered a written order granting plaintiff's motion for summary judgment. The court rejected defendant's argument that it did not receive certain invoices because defendant's answer did not assert that argument and admitted the existence of the subject invoices. The trial court found that the contract does not allow defendant "to withhold funds for an indefinite period of time for a 'good faith dispute.' " The court found that "any dispute is waived if it occurs outside [the 45-day payment period] or no notice of the dispute is provided in writing to [plaintiff."] The court found that no formal approval prior to beginning work is provided by the SOWs. The trial court found that defendant "waived any rights to dispute the subject invoices." The order stated that it "resolves all issues and disputes presented before this Court."

¶ 29    On April 14, 2025, defendant filed a motion to reconsider. Following full briefing by the parties, on October 22, 2025, the trial court denied defendant's motion to reconsider.

¶ 30    This appeal followed.

¶ 31                            ANALYSIS

¶ 32    This is an appeal from a summary judgment order in favor of plaintiff on a breach of contract claim. "Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Greggs USA, Inc. v. 400 E. Professional Associates, LP*, 2021 IL App (1st) 200959, ¶ 11. "On a motion for summary judgment, the [court] must construe the record strictly against the movant and liberally in favor of the nonmovant." *Id*. We address the entry of summary judgment *de novo*. *Id*. "Under *de novo* review, we perform the same analysis that a trial court would perform." *Reed v. Getco, LLC*, 2016 IL App (1st) 151801, ¶ 16. Under *de novo* review, "we owe no deference to the trial court's reasoning or rationale." *Council for Jewish Elderly v. Kurtz*, 2024 IL App (1st) 230102, ¶ 40.

¶ 33    To recover for a breach of contract, the plaintiff must establish four elements: (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff. *Greggs USA, Inc.*, 2021 IL App (1st) 200959, ¶ 12. "It is a general principle of law that absent some excuse for non-performance, one seeking to recover on a contract must allege and prove that he has substantially complied with all the material terms of the agreement." *Spancrete of Illinois, Inc. v. Brickman*, 69 Ill. App. 3d 571, 576 (1979). Plaintiff argued, and the trial court agreed, that defendant waived the right to contest certain invoices because no objection was made within 45 days of presentment. But to obtain summary judgment on a breach-of-contract claim, plaintiff still had to establish that it performed its own contractual obligations.

¶ 34    In determining whether there exists a genuine issue of material fact, the court has the duty to consider the entire record and to construe the evidence strictly against the moving party and liberally in favor of the opponent. *Id.* Summary judgment should be denied where there are disputed factual issues that are material to the essential elements of the cause of action. *Leon v. Max E. Miller & Son, Inc.*, 23 Ill. App. 3d 694, 699 (1974) ("the purpose of summary judgment proceedings is to determine whether there is any genuine triable issue of fact which must be passed upon").

¶ 35    On appeal defendant argued that the trial court erred in granting summary judgment in favor of plaintiff because there is a genuine dispute of fact as to an essential element of plaintiff's claim. Defendant argued there is a genuine issue as to whether plaintiff fully performed its contractual obligations. Defendant argued that its answer denied that plaintiff completed its work in a professional and workmanlike manner, and its response to plaintiff's motion for summary judgment argued that plaintiff either did not conduct the work required by

the PSA or did not finish agreed upon work. Defendant argued that its affidavit in support of its response pointed to specific examples of work plaintiff failed to complete. In response, plaintiff argued that defendant may not rely on Soczka's "blanket and conclusory statements that [plaintiff] did not comply with the PSA." Plaintiff argued that Soczka's affidavit was not sufficient to create a question of fact because Soczka's statements are not in compliance with Rule 191(a).

¶ 36    Plaintiff correctly argued that "summary judgment affidavits must contain not conclusions but only evidentiary facts to which the affiant is capable of testifying. [Citation.] Unsupported assertions, opinions, and self-serving or conclusory statements do not comply with the rule governing summary judgment affidavits." *Gassner v. Raynor Manufacturing Co.*, 409 Ill. App. 3d 995, 1005 (2011). Defendant responded its evidence of nonperformance is "at least as strong" as plaintiff's evidence of performance, which relied on statements by plaintiff's affiants and the invoices it submitted. Defendant argued that the invoices are not themselves evidence plaintiff completed the work. Defendant argued that plaintiff cannot rely on its averments that it completed the work—without further evidence of completion—and simultaneously complain that defendant's averments that plaintiff did not complete the work are barred by Rule 191(a). Defendant argued that if defendant's affidavit is barred, so should plaintiff's affidavits be barred. Defendant argued that the conflicting evidence from the parties on an essential element of plaintiff's claim is sufficient to preclude summary judgment.

¶ 37    Defendant also noted that plaintiff challenged Soczka's affidavit for the first time on appeal, and "the sufficiency of an affidavit cannot be tested for the first time on appeal where no objection was made either by motion to strike, or otherwise, in the trial court." *Fooden v. Board of Governors of State Colleges & Universities*, 48 Ill. 2d 580, 587 (1971). Further, defendant

argued that Soczka's affidavit satisfied Rule 191(a) because it was based on his personal knowledge and admissible facts. Defendant argued that Soczka's averments were supplemented by "references to the precise invoices it contends were generated before [defendant] confirmed what work was within the scope of work for that project" and "emails *** between [defendant and plaintiff] where the parties are discussing the scope of [plaintiff's] engagement in Spokane months after [plaintiff] started generating invoices related [to] that project." Defendant argued that it included "similar emails with respect to the Helena and HHK Projects." Defendant referred to these documents as Soczka's performance "evidence" contrasted with Soczka's performance "statements."

¶ 38    Defendant argued that Rule 191(a) only bars legal conclusions but allows conclusions grounded in personal knowledge. We agree. Our supreme court has stated that "as against positive, detailed averments of fact in an affidavit, allegations made on information and belief by an adverse party are insufficient, for they are not equivalent to averments of relevant facts but rather put in issue only the pleader's information and belief and not the truth or falsity of the 'facts' referred to." *Fooden*, 48 Ill. 2d at 587. In contrast, where the affiant is "apparently fully competent to testify on the matters presented," an objection to the competency of the affidavit is not well taken. *Id.* at 588. This court has recognized that "if, from the document as a whole, it appears that the affidavit is based upon the personal knowledge of the affiant and there is a reasonable inference that the affiant could competently testify to its contents at trial, Rule 191 is satisfied." (Internal quotation marks omitted.) *Piser v. State Farm Mutual Automobile Insurance Co.*, 405 Ill. App. 3d 341, 349 (2010). Sufficient "personal knowledge" may be established by firsthand knowledge or investigation of the matter. *Id.* at 350. We have reviewed Soczka's affidavit and its supporting documents and conclude that Rule 191(a) is satisfied. *Id.*

¶ 39　We also find that Soczka's affidavit and supporting documentation are sufficient to create a genuine issue of fact as to an element of plaintiff's claim: whether plaintiff performed its obligations under the contract. In addition to Soczka's statements based on his personal knowledge and investigation of the invoices, Soczka attached email communications between plaintiff and defendant addressing deficiencies in plaintiff's performance of its work under the contract. These deficiencies, in part, related to the actual work performed, rather than only plaintiff's submission of its invoices. Defendant's emails predate the date on which plaintiff admits it submitted its final invoices to defendant. Defendant's emails do not establish that plaintiff never corrected the deficiencies stated therein; however, Soczka averred plaintiff did not complete work on various projects. The pleadings, affidavits, and supporting communications raise a genuine dispute of material fact as to whether plaintiff substantially performed its contractual obligations under the PSA and SOWs. That dispute concerns the performance element of plaintiff's breach-of-contract claim and precludes summary judgment, regardless of whether defendant later waived objections to particular invoices under the payment provision. Construing the pleadings in favor of the nonmoving party, we find that defendant's affidavit and supporting documentation raised a genuine issue of material fact.

¶ 40　We also rely on plaintiff's own admissions in Babladi's second affidavit in support of plaintiff's motion for summary judgment. *Colt Construction & Development Co. v. North*, 168 Ill. App. 3d 913, 916-17 (1988) ("these admissions *** in his *** attached affidavit constitute binding judicial admissions, and may serve as the basis for summary judgment"). Based on our *de novo* review, and construing the pleadings in favor of the nonmoving party, we find that Babladi admitted that a genuine issue of fact exists as to whether plaintiff performed its obligations under the parties' agreement. Babladi admitted that under the PSA, defendant would

"request minor changes and adjustments" and plaintiff would "perform[] these tasks and corrections." Babladi also stated that because defendant cut off plaintiff's access to its systems to upload plaintiff's corrections, plaintiff did not complete changes and adjustments related to several projects and invoices at issue. Babladi not only admitted certain work was not performed, but blamed defendant for not doing that work itself. ("TDS could easily perform the remaining, minor administrative tasks and utilize Apex's work.") Plaintiff did not argue that these tasks were not material to the parties' agreement. Plaintiff did not argue that defendant cannot argue plaintiff's nonperformance based on defendant's actions. Plaintiff also did not argue that defendant waived its right to performance of plaintiff's obligations under the contract under either the invoice provision or the inspection provision of the parties' contract. Plaintiff only argued that defendant waived its right to challenge plaintiff's invoices under the 45-day payment provision.

¶ 41     The trial court found that "the PSA is clear that any dispute must be done via written notice within the 45-day payment period otherwise any dispute is waived ***." The trial court found that pursuant to the payment provision defendant waived any rights to dispute the subject invoices. We find that the trial court's finding was premature, and any waiver of a right to dispute invoices is not dispositive of this appeal. The dispositive issue for purposes of this appeal is whether plaintiff established its right to summary judgment because there is no genuine dispute of material fact as to whether plaintiff performed its obligations under the contract. We find it has not.

¶ 42     Moreover, the payment provision only provided that defendant could waive its right to dispute an invoice, not that it waives its right to plaintiff's performance. *Nation Oil Co. v. R. C. Davoust Co.*, 51 Ill. App. 2d 225, 238 (1964) ("the parties to a valid contract are bound to

perform it according to its terms \*\*\*. One cannot have all the benefits of a contract without taking therewith the obligations imposed by that contract."). If plaintiff establishes that it fully performed under the contract, it may be that defendant may not thereafter challenge plaintiff's invoices. Regardless, based on our *de novo* review we find that there are disputed factual issues that are material to an essential element of the cause of action. *Leon v. Max E. Miller & Son, Inc.*, 23 Ill. App. 3d at 699. Therefore, plaintiff was not entitled to summary judgment. Based on this finding, we have no need to address the parties' remaining arguments on appeal, including whether defendant waived its right to challenge plaintiff's invoices under the payment provision. *Benz v. Department of Children & Family Services*, 2015 IL App (1st) 130414, ¶ 32 ("we decline to render an advisory opinion or render an opinion merely to guide future litigation").

¶ 43                                      CONCLUSION

¶ 44     For the foregoing reasons, the judgment of the circuit court of Cook County is reversed.

¶ 45     Reversed.